# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ANN MARIE MYERS,

    Plaintiffs,

    v.

WELLS FARGO BANK, et al.,

    Defendants

Case No. 1:18-cv-144

McFarland, J.
Bowman, M.J.

## MEMORANDUM OPINION AND ORDER

Plaintiff initiated this Fair Credit Reporting Act case against Defendant Wells Fargo Bank on February 27, 2018. Currently pending is Plaintiff's motion to reopen and/or extend the discovery deadline, Defendant's response in opposition to that motion, Plaintiff's reply, and Defendant's supplemental response. For the reasons that follow, Plaintiff's motion will be denied.

### I.    Background

Plaintiff's original complaint alleged that Wells Fargo had violated the FCRA by incorrectly reporting a student loan debt that had been fully resolved through settlement, and then by refusing to correct the error when notified. (Doc. 1). Plaintiff further alleged that the improperly reported debt adversely impacted her ability to obtain a mortgage and/or other credit. On May 16, 2018, Plaintiff filed an amended complaint to add American Education Services as an additional Defendant, but the essence of her FCRA claims remained the same. On April 17, 2019, Plaintiff voluntarily dismissed Wells Fargo.

Pursuant to an agreed discovery plan adopted by the Court, Plaintiff was required to identify any experts not later than June 17, 2019, approximately four months

prior to the fact discovery deadline.  Plaintiff did not identify any experts, leading to the conclusion that none were required to prove her claims.  Fact discovery was later extended to December 20, 2019 and the dispositive motion deadline was extended to January 31, 2020, but no one sought the extension of the long-expired expert disclosure deadline until the last day of discovery.

**II.     Plaintiff's Motion to Extend/Reopen Expert Discovery**

In a motion filed on December 20, 2019, Plaintiff seeks to reopen expert discovery so that she can identify a new expert to address deposition testimony provided on December 17, 2019 by Defendant's corporate representative.  Plaintiff had previously been provided with copies of Defendant's debt reporting policies and procedures, but argues that which version applied to Plaintiff, when changes occurred, and why, were issues that were not fully apparent until the representative testified.  According to Plaintiff, the corporate representative clarified that policies in place just before Plaintiff settled her student loan debt would have meant that the debt was not reportable by AES, but that AES briefly changed its policies causing the debt to be reported and leading to Plaintiff's claims.  Although the change negatively impacted Plaintiff, AES subsequently changed its policies back to the prior version.

The corporate representative explained the changes as follows:

Q. Okay. Why would PHEAA have reported a balance in response to one of their disputes?

A. Depending on the timeframe of the dispute and the procedures at that time for current reporting, the processer may have put the balance on for that type of final status.

Q. What do you mean by that?

A. I believe that it was 2016 that that was reported. And procedures had

> changed as far as how to report the balance portion of a 93 status. And they did change again to --- there was a point in time where they would be reporting the balance with a 93 status. And that then changed back to reporting a zero balance with a serious delinquency or charge-off.
>
> Q. When were the policies of PHEAA changed and then changed back as you are describing, as it relates to the balance in connection with the 93 status?
>
> A. Okay. I do know that it reported back in 2016, late 2016. I believe that it was changed probably in 2015, so there would've been a period of time that it was ---that they would've responded to a dispute with the balance.
>
> Q. Okay. Do you know why the policy was changed in 2015?
> A. That was at the direction of our legal and compliance department.
>
> Q. Were you a part of that decision making?
>
> A. No.
>
> Q. Do you know why the policy was changed back a year later?
>
> A. That again was a legal and compliance decision.
>
> Q. Are both policies accurate?
>
> A. At the time that they were administered at PHEAA, we believe that that would've been accurate, yes.

(Doc. 37 at 4, quoting Deposition of Leslie Harris, page 31:12-33:23). Plaintiff now argues that she could not have foreseen this testimony, and requires an expert "to opine on the validity and reasonableness of the changes and their application to Plaintiff in light of the industry standards" for debt reporting under the FCRA. (*Id.*)

Defendant opposes reopening discovery for this purpose, arguing that the information is not "new" because the parties identified the policies and procedures for reporting as a focus of discovery in their Rule 26(f) report, and because Defendant had provided the referenced policies well before the corporate representative's deposition. In addition, although Plaintiff points out that in many cases an expert discovery deadline

3

will be set after a fact discovery deadline, in this case Plaintiff and Defendants mutually agreed in their Rule 26(f) report to have their expert disclosure deadline expire many months before the close of discovery.

The parties' dispositive motion deadline recently expired on January 31, 2020. Both parties have filed Notices with the Court indicating that each has served opposing counsel with a timely motion seeking summary judgment. Under an agreed-upon procedure adopted by the Court, the parties are expected to file their motions in the public record in the near future.

Based upon the record presented, the undersigned will deny Plaintiff's motion to reopen discovery to allow Plaintiff to obtain and identify a new expert to testify about the reasonableness of the Defendant's altered debt reporting policies. Plaintiff was not required to wait until the deposition of the corporate representative but could have sought clarification of the policy changes at an earlier time through other written discovery, such as interrogatories, if desired. When the parties agreed to early disclosure of any experts long before the expiration of the discovery deadline, they clearly anticipated that no experts would be needed. Allowing Plaintiff to identify an expert at this late date, more than six months after the expiration of the agreed deadline and at a time when the parties have exchanged cross-motions for summary judgment, would be highly prejudicial to the Defendant. Last but not least, the undersigned is not convinced that the topic for which expert testimony is sought would be appropriate or helpful for the trier of fact on the issues in dispute. Of course, both parties remain free to call any fact witnesses they like to help explain the various changes in Defendant's policies.

Accordingly, **IT IS ORDERED THAT** Plaintiff's motion to extend/reopen discovery in order to identify a new expert (Doc. 34) is **DENIED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge
