IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - CINCINNATI

| | | |
|---|---|---|
| ANN MARIE MYERS, | : | Case No. 1:18-cv-144 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| AMERICAN EDUCATION SERVICES, | : | |
| Defendant. | : | |

### ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (Doc. 74)

On March 8, 2021, the Court found that AES "willfully" violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*, by failing to conduct "reasonable investigations" into Plaintiff's disputes that AES was incorrectly reporting her credit history. (*See* Order, Doc. 73.) Accordingly, the Court granted Plaintiff's motion for partial summary judgment (Doc. 66), denied AES's motion for summary judgment (Doc. 63), and set a jury trial for October 18, 2021 on the only remaining issue: the calculation of damages. (*See* Order, Doc. 73; *see also* Notation Order, 3/08/2021.) AES now moves for reconsideration of that Order under Federal Rule of Civil Procedure 59(e). (Motion for Reconsideration, Doc. 74.) This matter is fully briefed (*see* Docs. 75, 76, 79, 82) and thus ripe for the Court's review. For the reasons below, AES's Motion for Reconsideration (Doc. 74) is **DENIED**.

### THE COURT'S PREVIOUS ORDER GRANTING
### PARTIAL SUMMARY JUDGMENT FOR PLAINTIFF (Doc. 73)

The Court's previous Order clearly details both the facts of this case and the reasoning supporting this Court's determination as to why AES violated the FCRA

(Order, Doc. 73) and is incorporated here in its entirety. Importantly, both parties moved for summary judgment, arguing that there were *no* genuine issues of material fact. The Court agreed, finding that the facts were largely undisputed. Rather, the only dispute was the legal effect of those facts. Resolution of this case thus turned on two questions: "First, did AES. . . fail to reasonably investigate Plaintiff's disputes? Second, was AES's failure to do so negligent or willful?" (*Id.* at Pg. ID 1529.)

*Reasonable Investigation*. At the insistence of both parties, the Court considered Eleventh Circuit case law, specifically *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016), to analyze whether AES had conducted a "reasonable investigation." Under this standard:

> When a furnisher. . . "reports that disputed information has been verified," as AES did here, "the question of whether the furnisher behaved reasonably will turn on ***whether the furnisher acquired sufficient evidence to support the conclusion that the information was true.***"

(Order, Doc. 73, Pg. ID 1530-31 (quoting *Hinkle*, 827 F.3d at 1303)) (emphasis added.) As the Court noted, this standard is entirely consistent with the Sixth Circuit's standard — which turns on the thoroughness of the information reviewed. (*Id.* at Pg. ID 1529-30, 1533). *See also Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) ("[T]he term 'investigation' itself denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review.").

The Court concluded that AES's investigations were "patently unreasonable" under both the Sixth and Eleventh Circuit's standards. (*See* Order, Doc. 73, Pg. ID 1531.) When responding to the dispute, instead of reaching out to Wells Fargo (to whom AES

2

had returned the account and thus who would have had up-to-date information as to the status of the account), AES chose to rely on its own undisputedly outdated and inaccurate internal records to verify information that AES knew it no longer possessed. Thus, AES failed to "acquire sufficient evidence to support the conclusion that the information was true," *Hinkle*, 827 F.3d at 1303, and so, AES's investigations were "patently unreasonable." (*See* Order, Doc. 73, Pg. ID 1531.)

***Willfulness***. Next, the Court examined whether AES's conduct was willful, because to prevail, Plaintiff also had to demonstrate that AES's violation was either negligent or willful. A willful violation of the FCRA occurs when a person demonstrates "reckless disregard" of a statutory duty. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007). This must entail "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. (cleaned up). Importantly, the Court noted that the Eleventh Circuit has held that "a reasonable jury could find that [defendant] willfully violated § 1681s-2(b) when it reported [] accounts as 'verified' without obtaining sufficient documentation." (Order, Doc. 73, Pg. ID 1536.)

Accordingly, the Court found that AES's conduct was willful:

> AES fully admits that it failed to conduct any investigation outside of its own internal records, even though it knew the account had been transferred back to Wells Fargo. Yet AES still verified such information without obtaining any documentation from Wells Fargo. Moreover, even after Plaintiff contacted AES directly and AES sent Plaintiff a letter indicating that she had a $0 balance owed, AES continued to verify information without ever obtaining any documentation from Wells Fargo or Plaintiff. Although AES eventually corrected its inaccurate reporting of Plaintiff's balance owed in November 2016, it did not do so because it had "acquired sufficient evidence to support the conclusion that the information was true." *Hinkle*, 827 F.3d at 1303. The only way

3

> AES could have done so would have been to reach out to Wells Fargo or Plaintiff, the only parties that had such evidence. But AES's policy precluded employees from contacting third parties and instead instructed them to verify disputed information based on AES's own internal records, even when AES knew that its records were outdated or that the disputed information was not in their possession. And by doing so here, AES created "an unjustifiably high risk of harm that [was] either known or so obvious that it should [have been] known." *Safeco Ins.*, 551 U.S. at 68.

(Order, Doc. 73, Pg. ID 1536-37.)

## LAW

The Court's adjudication of this Motion is guided by two rules of Civil Procedure: Rule 59(e) and Rule 56.

***Rule 59(e).*** To prevail on a motion for reconsideration under Rule 59(e), a party must demonstrate either: (1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Relief under this rule, however, is an "'extraordinary remedy' reserved for exceptional cases" that fit squarely within one of the four elements above. *Hines v. Comm'r of Soc. Sec.*, 414 F. Supp. 3d 1080, 1081 (S.D. Ohio 2019) (Newman, J.) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)).

Importantly, a Rule 59(e) motion is not an opportunity "to re-hash old arguments or [] advance positions that could have been argued earlier but were not." *Gulley v. Cty. of Oakland*, 496 F. App'x 603, 612 (6th Cir. 2012) (cleaned up). Indeed, such a motion should be denied if it only "raise[s] arguments which could, and should, have been made before," *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998), or "is premised on evidence that the party had in its control prior to the original entry of

4

judgment." *Emmons v. McLaughlin,* 874 F.2d 351, 358 (6th Cir. 1989). "A litigant will not get himself a new judgment simply by making points he already has made or could have made." *Fields v. White,* No. CV 15-38-ART, 2016 WL 7425291, at *11 (E.D. Ky. Dec. 22, 2016) (Thapar, J.) (cleaned up). "If he simply disagrees with the district court's judgment, he can appeal." *Id.*

*Rule 56*. Rule 56 requires a court to grant summary judgment if the record "reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo,* 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). If the movant demonstrates the absence of any genuine issue of material fact, the burden of production shifts to the nonmovant, who is then required to present some type of evidentiary material upon which a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Celotex Corp. v Catrett,* 477 U.S. 317, 324 (1986). While the court must "view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the nonmoving party," *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007), it is not required to do so if the nonmovant's version of events is "blatantly contradicted by the record, [such] that no reasonable jury could believe it." *Scott v. Harris,* 550 U.S. 372, 380 (2007). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968), judgment may be granted. *Anderson,* 477 U.S. at 249.

## ANALYSIS

AES essentially argues that reconsideration is appropriate because the Court's

conclusions that AES failed to perform a "reasonable investigation" and that this failure was "willful" constitute "clear errors of law" that would create "manifest injustice." (Motion for Reconsideration, Doc. 74.) However, a "clear error of law" occurs where the original ruling "overlooked or disregarded" some "argument or controlling authority" or where the moving party "successfully points out a manifest error." *Jackson v. Ford Motor Co.*, No. 15-1180, 2016 WL 4533028, at *1 (W.D. Tenn. Mar. 21, 2016) (citations omitted). AES fails to clear this hurdle.

**I. AES fails to show a "clear error of law" in the Court's determination that AES's investigations were unreasonable as a matter of law.**

AES first argues that it was error for the Court to find that its investigations were unreasonable because, according to AES, existing regulatory guidance permits furnishers to rely solely on internal records to verify disputed information. But this argument fails to demonstrate a "clear error of law," both procedurally and substantively.

As an initial matter, AES's argument independently fails because it is procedurally improper. Here, AES simply re-hashes an old argument—that it was reasonable for it to rely on internal records—under the guise of regulatory guidance that AES readily admits "neither party cited to" at summary judgment. (AES's Motion for Reconsideration, Doc. 74, Pg. ID 1540.) But this guidance was published years ago and was thus readily available to AES at the time of its initial motion. As such, it is neither "newly discovered evidence," nor reflects any "intervening changes" in the law. AES's argument fails for this reason alone. *See Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989) ("It is well established. . . that a district court does not abuse its discretion in denying a Rule 59

motion when it is premised on evidence that the party had in its control prior to the original entry of judgment.").

Nevertheless, the argument fails on the merits as well. First, the regulatory guidance AES cites does not stand for the proposition AES asserts. AES simply isolates certain excerpts which, when read in the context of the regulatory guidance as a whole (as they must), actually cuts against AES's contention. For example, AES relies predominantly on Appendix E to Part 1022.42 (Doc. 74-1, Pg. ID 1555-56), which provides that a "furnisher's policies and procedures should be reasonably designed to promote the following [four] objectives":

(1) furnish information about accounts or other relationships with a consumer that is **accurate**. . .

(2) furnish information about accounts or other relationships with a consumer that has **integrity**. . .

(3) conduct reasonable investigations of consumer disputes and **take appropriate actions based on the outcome of such investigations**; and

(4) **update the information it furnishes as necessary to reflect the current status of the consumer's account or other relationship**. . .

(*Id.*) (emphasis added.) None of these objectives were served when, here, AES relied on its own outdated and inaccurate internal records to verify information that it knew was not in its possession. Thus, AES's post hac attempt to justify its actions in reliance on isolated portions of a regulation fail when viewed in light of the that very same regulation's governing objective.

Furthermore, even if regulatory guidance encourages AES to rely on its own internal records, here, those records contained undisputedly inaccurate information.

More information was thus required as a matter of law, and these regulations cannot be read to permit reliance on inaccurate information. Because AES made the deliberate decision to affirmatively verify the information, it also undertook an obligation to seek out or obtain accurate information from the party that actually possessed it. (*See* Order, Doc. 73, Pg. ID 1535) ("no juror could conclude that AES's investigation was 'reasonable' when AES continued to verify inaccurate information that it did not possess, especially when AES knew that Wells Fargo was likely in possession of such information, but failed to 'seek out or obtain' it from them.")

Moreover, this Court's reliance on Eleventh Circuit law, in addition to Sixth Circuit law, was not error. First and foremost, Eleventh Circuit law is entirely consistent with Sixth Circuit law — which AES completely ignores. Second, AES encouraged the Court's consideration of Eleventh Circuit law. (*See* AES's Response, Doc. 69, Pg. ID 1449) (arguing that the Eleventh Circuit has provided "***crystalline guidance*** on what constitutes a 'reasonable investigation.'") (emphasis added.) The Court agrees that the Eleventh Circuit's decision in *Hinkle* is consistent with Sixth Circuit law and thus aided in the disposition of this dispute. (*See* Order, Doc. 73, Pg. ID 1533) ("The reasonable thing for AES to have done would have been to reach out to Wells Fargo. Such action is mandated in the Eleventh Circuit, *see Hinkle*, 827 F. 3d. at 1303, and is consistent with similar opinions issued by other district courts within the Sixth Circuit.") (citations omitted.)

Contrary to AES's argument, though, that decision did not "impose an unduly

8

burdensome investigation requirement on furnishers,"[1] but "rather, it presents [AES] with a choice regarding how [it] handle[s] disputed information." *Hinkle*, 827 F.3d at 1303. AES had the option of responding to Plaintiff's dispute in one of three ways: (1) "verified," (2) "unverifiable," or (3) "inaccurate or incomplete." (*See* Order, Doc. 73, Pg. ID 1530-34.) By choosing to "verify" the disputed information as "true," AES undertook certain obligations to conduct a reasonable investigation, namely to acquire ***"sufficient evidence to support the conclusion that the information was true."*** *Hinkle*, 827 F.3d at 1303 (emphasis added).

As noted above, AES failed to acquire sufficient evidence by failing to contact either Wells Fargo or Plaintiff—the only parties who would have had such information. *See Hinkle*, 827 F.3d at 1303. Accordingly, AES's investigation was not reasonable—as a matter of law—and the regulations on which AES relies do not alter this conclusion.

## II. AES fails to show a "clear error of law" in the Court's determination that AES "willfully" violated the FCRA as a matter of law.

AES next contends that it was clear error for the Court to find that its violation of the FCRA was "willful." Its argument is two-fold, and the Court will discuss each in turn below.

### A. No "genuine issue of material fact" exists as to whether AES's polices precluded it from contacting third parties.

AES now contends that "[t]here is evidence which establishes a genuine issue of material fact as to whether AES's policies preclude its employees from contacting third

---

[1] (*See* Motion for Reconsideration, Doc. 74, Pg. ID 1542) ("Under the Order, a furnisher would be required to seek out and report on information about an account years after the furnisher's connection to the account has ended. Were AES to pursue such a policy uniformly, it could cause confusion.").

9

parties to ascertain relevant information" during a credit dispute investigation. (Motion for Reconsideration, Doc. 74, Pg. ID 1538.) This argument not only contradicts the position AES took above—that it should have been permitted to rely on its own internal records—but it also contradicts the position AES previously took at summary judgment. There, AES stated that its policy was to *not* contact creditors, consumers, or other related third parties. (*See* AES Response, Doc. 69, Pg. ID 1444, 1450); (AES Reply, Doc. 71, Pg. ID 1490, 1499.) (*See also* Harris Depo., Doc. 66-6, 37:11—38:1) ("Q. After an account is pulled back by a creditor and a consumer disputes balance or any issue with the count, will [AES] communicate with the creditor to determine whether its current reporting is accurate? A. No.")

Nevertheless, AES now reverses course and, attempting to create a genuine issue of material fact, argues that its "policies [indeed] permit, and in some cases *require* its employees to contact third parties or to conduct outside research in the course of investigations under various circumstances." (Motion for Reconsideration, Doc. 74, Pg. ID 1546) (emphasis added.) AES cites four such policy provisions in support. However, none of these provisions actually apply to the facts of this case. The first two say nothing about contacting third parties.[2] And while the other two indeed permit employees to

---

[2] The first provision provides: "NOTE: [employees] may view a history of certain data elements that were previously reported to the CRAs. While this information may be viewed and considered in light of the consumer's dispute, [it] must not be used to confirm the accuracy of that information that was reported. There may be situations in which information that was previously reported must be corrected or adjusted." (Policy, Doc. 74-4, Pg. ID 1634.) Notably, this provision warns against "relying solely upon data previously reported in order to confirm a disputed item"—which is *precisely* what AES did here—and it says nothing about *actually contacting* third parties. Accordingly, this cannot support AES' position.

The second provision relates to "possible duplication" discrepancies with "disbursement dates," (*see id.* at Pg. ID 1715), which was never at issue here. Even if it was, the provision says nothing about contacting

10

contact *some* third parties under specifically delineated circumstances, those circumstances were never implicated here.[3] The policy provisions are thus entirely irrelevant to the current dispute. Even if, however, this case involved factual circumstances which arguably required some third-party communication, AES still fails to create a fact question—because AES undisputedly never contacted a third party about Plaintiff's disputes or debt.

Therefore, neither of these arguments creates a genuine issue of material fact nor identifies a "clear error of law" necessitating the Court to reconsider its decision.

**B. On the record of this case, "willfulness" is not a question for the jury.**

In its final argument, AES contends that "the determination of whether a violation of the [FCRA] was willful or negligent depends upon questions of fact which should be decided by the jury." (Motion for Reconsideration, Doc. 74, at Pg. ID 1539.) The Court disagrees.

As an initial matter, AES fails to articulate how the Court's decision constitutes as a

---

that CRA; it just instructs the employee to "send an email to [the] Escalated Credit email group" so a "Credit Analyst" can "pull dataviews from the originating CRA." (*Id.*)

[3] The third provision applies to fraud or identity theft investigations, which is not implicated here. (*See id.* at Pg. ID 1652-54) ("SECTION 4: Fraud/Identity Theft Credit Disputes . . . (ii) If police department has not been contacted utilize https://www.google.com to obtain the police department contact information. (iii) Contact police department to verify if police report is valid.")

The fourth provision instructs employees to send generic form letters to consumers if a dispute does not contain sufficient information, which are not the facts currently before the Court. (*See id.* at Pg. ID 1629-30) ("If the consumer does not provide sufficient information to perform a reasonable investigation. . . within 5 business days of such determination, send the [AES standard response] letter. . . Comment the account indicating the correspondence was not sufficient to complete the review, what information is needed, and that a letter was sent to the customer. . . *If anything else is needed* to further review the account *contact your Credit Bureau Reporting Analyst or Supervisor to have a special letter requested.*") (emphasis added).

"clear error of law." Instead, AES simply argues that "in the absence of precedent from the Sixth Circuit Court of Appeals. . . the Court should [have] reserve[d] the determination on 'willfulness' or 'negligence' [for] the jury." (*Id.* at Pg. ID 1548.) AES then proceeds to try and differentiate each of the cases cited by the Court in its Order, arguing that other courts have sent this same question to the jury in the past. Indeed, while other courts may have done based on the facts of those cases, here, no reasonable juror could have found that AES's conduct was anything other than willful. Accordingly, summary judgment was appropriate. *See e.g., Scharf v. Trans Union, LLC*, No. 14-14322, 2015 WL 6387501, at *2 (E.D. Mich. Oct. 22, 2015) (district court granting summary judgment against defendants for willfully violating the FCRA).

A willful violation occurs when a furnisher "recklessly disregards" its statutory duty such that it creates "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (cleaned up). It is important to remember that § 1681s-2(b) of the FCRA was "designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information," *Boggio*, 696 F.3d at 614, which is precisely what AES did here. AES *knew* that its information was outdated and inaccurate and that the accurate information was in Wells Fargo's possession. But instead of seeking that information out, AES made the deliberate choice to verify and report the *inaccurate* information. In other words, AES chose to be willfully blind. Worse yet, for no apparent reason, AES started reporting that Plaintiff had a current balance and amount past due of **$15,841**. AES readily admits that this was an error. And it was not a small error either. Yet even after AES

12

acknowledged—*in writing*—that it knew Plaintiff did not have a current balance or amount past due, AES continued to report the inaccurate information anyway. *That* is more than mere negligence; it is a willful violation of AES's statutory duties in reckless disregard to the very purpose of the FCRA. Accordingly, on these facts, no reasonable juror could have concluded that AES's conduct was anything other than willful, rendering summary judgment appropriate.

## CONCLUSION

For the reasons above, AES's Motion for Reconsideration (Doc. 74) is **DENIED**. AES fails to demonstrate how the Court's previous Order (Doc. 73) contained any "clear errors of law" or would create "manifest injustice." This case will proceed to trial on October 18, 2021 on the only remaining issue of the calculation of damages.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND